IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARGARET SHAW,

        Plaintiff,

    v.

FIRST COMMUNICATIONS, LLC,
*et al.*,

        Defendants.

No. 19-cv-08070
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiff Margaret Shaw (Plaintiff) was the President of Defendant First Communications, LLC (FC) from approximately January 2013 until January 2019. As part of her employment, she entered into an employment agreement with FC, pursuant to which FC had the right to terminate Plaintiff's employment without cause. The employment agreement contains certain post-employment restrictive covenants, including non-competition and non-solicitation provisions. In early January 2019, FC informed Plaintiff that she was being terminated. No cause for termination was offered. On January 9, 2019, Plaintiff signed a separation agreement and general release. The separation agreement provides that Plaintiff would be paid an amount equal to one year of her base salary payable over a one-year period. Following her termination, Plaintiff opened her own consulting business. On November 21, 2019, FC informed Plaintiff that it would no longer pay her severance based on Plaintiff's alleged breach of the restrictive covenants in her employment agreement.

Plaintiff subsequently filed suit against FC; Sandi Murphy, FC's General Counsel (Murphy); Mark A. Sollenberger, FC's Chief Financial Officer (Sollenberger); and three members of FC's Board of Directors, Mark T. Clark (M. Clark), Joseph R. Morris (Morris), and Robert T. Clark (R. Clark) (collectively, Defendants). R. 1, Compl.[1] In Count I, Plaintiff alleges violation of the Illinois Wage Payment and Collection Act (IWPCA) against all Defendants; in Count II, she alleges breach of the separation agreement against FC; and in Count III, she seeks a declaratory judgment against FC that certain provisions of the employment agreement are unenforceable as a matter of law. *Id.* Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint, or in the alternative, to Stay any Remaining Claims Pending Arbitration based on lack of subject matter jurisdiction, improper venue, lack of personal jurisdiction, and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 15, Mot. Dismiss. Defendants also request that if the Court does not dismiss any or all of Plaintiff's claims, it should stay any remaining claims pending arbitration. *Id.* For the reasons that follow, Defendants' motion is granted based on improper venue, as a result of the underlying arbitration provision.

## Background[2]

Plaintiff began working for FC, an Ohio limited liability company with an office in Illinois, on or around January 7, 2013 as its President. Compl. ¶¶ 8, 15. Several

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

weeks later, an employment agreement was finalized, and Plaintiff accepted the agreement. *Id.* Although Plaintiff signed the employment agreement after January 17, 2013, it was backdated to January 7, 2013 at the request of Murphy and Morris (the Employment Agreement). *Id.* ¶ 15. Section 10(d) of the Employment Agreement permits FC to terminate Plaintiff's employment at any time with or without cause upon thirty days' written notice to Plaintiff. Compl., Exh. A, Employment Agreement at 9. If FC terminates Plaintiff without cause, "upon execution and delivery (and non-revocation) of the Separation and General Release in the form attached hereto as <u>Exhibit A</u>, [FC] shall continue to pay [Plaintiff] for one (1) year following the date of termination." *Id.* (emphasis in original). Section 6 of the Employment Agreement is a non-competition and non-solicitation clause, which restricts Plaintiff's activities during the term of the agreement and for a period of one year after the expiration or termination of Plaintiff's employment with FC for any reason. *Id.* at 4–6.

Section 11 of the Employment Agreement states that it "shall be governed and construed in accordance with the laws of the State of Ohio, without regard to principles of conflicts of laws." Employment Agreement at 10. Section 19 of the Employment Agreement also contains an arbitration provision which states that ". . . if any contest or dispute arises between the parties with respect to this Agreement, such contest or dispute shall be submitted to binding arbitration for resolution in Akron in accordance with the rules or procedures of the American Arbitration Association then in effect." *Id.* at 11–12.

3

On May 14, 2018, Plaintiff signed an amendment to the Employment Agreement, by which she released any rights to distributions from a license sale in exchange for a higher base salary, bonus potential, and other consideration (the Amendment). Compl. ¶ 19. Section 5 of the Amendment states that the Amendment "shall be governed by and construed in accordance with the laws of the State of Ohio, without regard to conflicts of law principles, and shall be subject to the arbitration provisions set forth in Section 19 of the Employment Agreement." Compl. Ex. A, Amendment at 2.

In early January 2019, Defendants informed Plaintiff that she was being terminated without cause. Compl. ¶ 21. On January 9, 2019, Plaintiff signed a Separation Agreement and General Release (Separation Agreement). *Id.* ¶ 22. Pursuant to Section 3 of the Separation Agreement, FC agreed to pay Plaintiff "an amount equal to one (1) year Base Salary payable over such period in accordance with [FC's] regular payroll practices and beginning immediately following the revocation Period Expiration Date, as defined in Section 5(g) of this Agreement." Compl., Exh. B, Separation Agreement at 1. Section 8 of the Separation Agreement states that it "shall be governed and construed in accordance with the laws of the State of Ohio without regard to provisions or principles thereof relating to conflicts of laws." *Id.* at 4.

Plaintiff's last date of employment with FC was February 8, 2019. After her termination from FC, Plaintiff opened her own consulting business. *Id.* ¶ 25. On November 15, 2019, FC notified Plaintiff that FC will not pay Plaintiff her severance

starting November 18, 2019, because she was in breach of the restrictive covenants in the Employment Agreement. *Id.* ¶¶ 33, 35. Plaintiff alleges that Defendants owe her $67,307.69 in severance. *Id.* ¶¶ 36, 37.

Plaintiff subsequently filed a multi-count complaint against Defendants. Count I alleges violation of the Illinois Wage Payment and Collection Act (IWPCA) against all Defendants (Compl. ¶¶ 38–45); Count II alleges breach of the Separation Agreement against FC (*id.* ¶¶ 46–52); and Count III seeks a declaratory judgment against FC that certain provisions of the Employment Agreement are unenforceable as a matter of law (*id.* ¶¶ 53–61). Defendants move to dismiss the Complaint based on improper venue and lack of subject matter jurisdiction due to the underlying arbitration provision. Mot. Dismiss. They also seek dismissal based on lack of personal jurisdiction and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Alternatively, Defendants request that if the Court does not dismiss any or all of Plaintiff's claims, it should stay any remaining claims pending arbitration. *Id.*

## Legal Standard

A case may be dismissed for lack of proper venue. FED. R. CIV. P. 12(b)(3). Dismissal is appropriate when the forum selection clause of a contract requires arbitration in another district. *HTG Cap. Partners, LLC v. Doe*, 2016 WL 612861, at *8 (N.D. Ill. Feb. 16, 2016) (citing *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)). The plaintiff bears the burden of establishing that venue is proper. *Nagel v. ADM Inv. Servs, Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). Under

Federal Rule of Civil Procedure 12(b)(3), the court is "not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment." *Nagel*, 995 F. Supp. at 843 (a court may examine facts outside the complaint to determine whether venue is proper). The court must resolve factual conflicts in the parties' submissions and draw any reasonable inferences in the plaintiff's favor. *Id.* Any written instrument attached as an exhibit to a pleading is considered a part of the pleading. FED. R. CIV. P. 10(c).

## Analysis

Defendants advance several arguments in their motion to dismiss. First, Defendants argue[3] that due to the arbitration provision in the Employment Agreement, which was incorporated into the Separation Agreement, the Court should dismiss the Complaint for lack of subject matter jurisdiction and improper venue.[4] Mot. Dismiss at 6–11. Next, Defendants assert that Plaintiff's IWPCA claim against the individual Defendants must be dismissed because the individual Defendants are not subject to personal jurisdiction in Illinois and because Plaintiff fails to sufficiently plead an IWPCA claim against the individual Defendants. *Id.* at 11–14. Finally, Defendants posit that if the Court deems dismissal of any or all of Plaintiff's claims

---

[3]In support of their motion, Defendants submit, among other declarations, the Declaration of Murphy.

[4]Although Defendants argue in their opening brief that the Complaint should be dismissed for both lack of subject matter jurisdiction and for improper venue, Mot. Dismiss at 10–11, Plaintiff does not address Defendants' subject matter jurisdiction argument nor do Defendants pursue it in their Reply. Because arbitration must be compelled under Rule 12(b)(3), and this Court is the improper venue for the parties' dispute, the Court need not address Defendants' subject matter jurisdiction argument.

at this stage, then any remaining claims should be stayed pursuant to Section 3 of the Federal Arbitration Act while arbitration on the remaining claims proceeds. *Id.* at 14–15. In her Response, in addition to other counterarguments, Plaintiff contends that the choice of law provisions in the Employment Agreement and Separation Agreement should not be enforced as they violate Illinois public policy. R. 22, Pl.'s Resp. at 10–11.

## I.  The Choice-of-Law Provisions

Before addressing the arbitration provision, the Court must first address the validity of the choice-of-law provisions in the Employment Agreement and the Separation Agreement. Plaintiff argues in her Response that they should not be enforced because her IWPCA claim is not a contractual dispute covered by the agreements, but rather a dispute over whether Defendants violated Plaintiff's statutory rights. Pl.'s Resp. at 10. In their Reply, Defendants contend that the Court should disregard this argument, because Plaintiff's dispute is clearly contractual, and her IWPCA claim is within the scope of disputes about the agreements. R. 23, Defs.' Reply at 14.[5] Alternatively, Plaintiff posits that even if the choice-of-law provisions

---

[5]Defendants correctly note that Plaintiff's characterization of *Johnson v. Diakon Logistics*, 2020 WL 405636, at *7 (N.D. Ill. Jan. 23, 2020) is incorrect. The court in that case did not make the holding Plaintiff suggests; instead, the court stated that it had not yet decided whether the contracts at issue and their Virginia choice-of-law provisions limited actions by the plaintiffs with respect to rights granted them under Illinois law. In the only other Northern District of Illinois case Plaintiff cites, *Precision Screen Machs. Inc. v. Elexon, Inc.*, 1996 WL 495564, at *2 (N.D. Ill. Aug. 28, 1996), the court evaluated a confidentiality agreement containing a limited choice-of-law provision which provided for the application of New Jersey substantive law, not a comprehensive choice-of-law provision as is at issue in this case.

apply, the choice-of-law provision in the Separation Agreement should not be enforced, because it violates Illinois public policy. *Id.* at 11 (citing *Brne v. Inspired eLearning*, 2017 WL 4263995, at *5 (N.D. Ill. Sept. 26, 2017)). Defendants retort that Plaintiff's argument counters well-established law in this District. Defs.' Reply at 12–14. The Court agrees with Defendants.[6]

The law is clear that where a valid contract has been formed, a court should enforce the choice of law provision contained within that contract unless it violates the forum state's public policy, and the forum state has a materially greater interest in the litigation than the chosen state. S*ee, e.g., Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1413 (N.D. Ill. 1996) (following § 187 of the Restatement (Second) of Conflict of Laws where "as here, the parties to a contract have included an express choice of law provision in their contract"). Here, Plaintiff maintains that the Ohio choice-of-law provision violates Illinois public policy, because Ohio does not provide the same protections to employees as the IWCPA. This issue was recently addressed in *Ayyash v. Horizon Freight Sys., Inc.*, 2018 WL 5994755, at *4 (N.D. Ill. Nov. 15, 2018).

In *Ayyash*, the plaintiff, who worked as a driver for the defendant, argued that the Ohio choice-of-law provision in his employment agreement with the defendant violated Illinois public policy "because the clause essentially waives [his] rights under the IWPCA." 2018 WL 5994755, at *4. The plaintiff further argued that the

---

[6]Furthermore, Plaintiff appears to take inconsistent positions regarding the applicability of the choice-of-law provisions—Plaintiff also argues that the Court should apply Ohio law to determine whether an agreement to arbitrate exists based solely on the Ohio choice-of-law provision in the Separation Agreement. Pl.'s Resp. at 4.

agreement's forum selection clause was also unenforceable, because it was "part of the same non-severable contract as the allegedly unenforceable choice of law clause." *Id.* The court disagreed, finding that the choice-of-law provision did not violate public policy because neither the choice-of-law provision nor the forum selection clause included an express waiver of rights. *Id.* at *5. In other words, the court held that the choice-of-law provision was not tantamount to a waiver of rights under the IWPCA. *Id.* (citing *Cornell v. BP Am. Inc.*, 2015 WL 5766931, at *4 (N.D. Ill. Sept. 30, 2015); *Lubinski v. Hub Grp. Trucking, Inc.*, 2015 WL 10732716, at *3 (W.D. Tenn. Sept. 22, 2015)). The court also noted that the Illinois Department of Labor views choice-of-law provisions designating non-Illinois law as enforceable. *Id.* (citing Wage Payment and Collection Act FAQ, Illinois Dep't of Labor, https://www.illinois/gov/idol/FAQs/Pages/wage-payment-faq.aspx (last visited Jan. 13, 2021)). The Court agrees with *Ayyash*'s reasoning and finds that the choice-of-law provision in the Separation Agreement does not constitute an express waiver of Plaintiff's statutory rights.

Plaintiff insists that "contractual choice of law provisions that bind parties to statutory schemes lacking the IWPCA's protections should not be enforced." Pl.'s Resp. at 11 (citing *Brne*, 2017 WL 4263995, at *5; *Byrne v. Hayes Beer Distrib. Co.*, 122 N.E.3d 753 (Ill. App. Ct. 2018)). *Brne*, as noted by Defendants, does not support such a sweeping proposition. *See* Defs.' Reply at 13. In *Brne*, the plaintiff filed suit against his employer defendant alleging a violation of the IWPCA and unjust enrichment. 2017 WL 4263995, at *2. The defendant moved to dismiss the complaint

based on improper venue, asserting that the arbitration provision in the plaintiff's employment agreement governed the plaintiff's claims. The plaintiff, on the other hand, argued that Illinois law should govern the employment agreement in spite of the Texas choice-of-law provision in the agreement, and under Illinois law, the arbitration clause in the agreement was unenforceable. *Id.* The arbitration provision stated that the plaintiff and the defendant would each separately pay their own attorneys' fees and expenses. *Id.* at *4. The plaintiff argued that the attorneys' fees portion was unconscionable, because the IWCPA allows an employee who succeeds on an IWCPA claim to recover reasonable attorneys' fees. Therefore, the plaintiff reasoned that such a provision deprived the plaintiff of his rights under the IWPCA. *Id.* The defendant countered that the fee-shifting waiver portion was not unconscionable, because the attorneys' fees provision in the IWCPA is not an essential substantive right and that under the American Arbitration Association (AAA) rules, the arbitrator had discretion to award attorneys' fees to the plaintiff if he prevailed. *Id.* The court agreed with the plaintiff, finding the fee-shifting waiver portion inconsistent with the IWPCA and thus substantively unconscionable. *Id.* at *5. The court severed the attorneys' fees portion of the arbitration clause but found the remainder of the arbitration clause enforceable. *Id.* at *6.

This case is distinguishable, however, because the court did not rule that the choice-of-law provision was unenforceable or invalid on the basis that it was inconsistent with the IWPCA. Specifically, the court did not strike the choice-of-law provision. Plaintiff's challenge of the Ohio choice-of-law provision fails as pursuant to

*Ayyash*, such a choice-of-law provision does not violate public policy because it does not include an express waiver of rights. 2018 WL 5994755, at *5.

Plaintiff's reliance on *Byrne v. Hayes Beer Distrib. Co.*, 122 N.E.3d 753 (Ill. App. Ct. 2018) fares no better. *See* Pl.'s Resp. at 11; Defs.' Reply at 13–14. In *Byrne*, the employer defendant, a beer distributing company, adopted a policy of deducting money from its delivery drivers' commissions for beer that stayed on the shelf too long and became stale. *Id.* at 756. The plaintiff, a delivery driver, filed a claim with the Illinois Department of Labor (IDOL), arguing, among other things, that the policy violated Section 9 of the IWPCA. *Id.* at 757. The IDOL dismissed the claim, because it found that the issue arose out the parties' collective bargaining agreement and it therefore lacked jurisdiction. The plaintiff filed a complaint for administrative review of the IDOL's dismissal of his claim, which the trial court granted. *Id.* The trial court found that the plaintiff's IWPCA statutory claim was not founded upon the parties' collective bargaining agreement and did not need to be interpreted to resolve the matter. *Id.* at 758. The defendant then filed an interlocutory appeal, challenging the trial court's holding regarding the nature of the plaintiff's IWPCA claim. *Id.* The appeal court rejected the defendant's argument that the parties, through their collective bargaining agreement, had contracted around the no-deduction provision in the IWPCA. *Byrne*, 122 N.E.3d at 762. The appellate court found that the language of the IWPCA was mandatory, not permissive, and the parties could not have contracted around the specific IWPCA at issue. *Id.*

The Court finds *Byrne* distinguishable and therefore, of little utility. *Byrne,* unlike this case, did not involve a choice-of-law provision. In *Byrne*, the Illinois appellate court did not consider the applicability of a choice-of-law provision in the context of the IWPCA. Instead, the court made a narrow finding regarding the parties' collective bargaining agreement and its effect on the plaintiff's rights under the IWPCA. Nothing in the court's opinion suggests that a choice-of-law provision waives a plaintiff's rights under the IWPCA, and the Court cannot and does not make such a determination here by upholding the choice-of-law provisions in the agreements.[7]

Accordingly, the Court finds the choice-of-law provisions in both the Employment Agreement and the Separation Agreement do not violate Illinois public policy. The Court now turns to the arbitration provision.

## II.    The Arbitration Provision

At the outset, the Court notes that the parties do not dispute the presence of the arbitration provision in the Employment Agreement. Defendants argue that FC and Plaintiff agreed to arbitrate all of Plaintiff's claims against Defendants in Akron, Ohio based on the arbitration provision in the Employment Agreement. Mot. Dismiss at 7–9. They assert that the arbitration provision is clear and unambiguous; that Plaintiff and FC integrated the Separation Agreement as a material term of the Employment Agreement; and that FC and Plaintiff incorporated the arbitration provision into the Separation Agreement. *Id.* As a result, Defendants argue, both the

---

[7]As discussed in more detail below, this is a decision for the AAA to make, not the Court.

Employment Agreement and Separation Agreement require arbitration of all of Plaintiff's claims. *Id.*

Plaintiff responds that, contrary to Defendants' characterization, her claim for severance is governed by the Separation Agreement, not the Employment Agreement. Pl.'s Resp. at 4. Plaintiff asserts that the Separation Agreement does not contain an arbitration provision and also supersedes the Employment Agreement. *Id.* at 3–7. As such, Plaintiff insists that her claim is not subject to arbitration. Alternatively, Plaintiff asserts that even if the Employment Agreement's arbitration provision applies, the arbitration provision should not be enforced because it is both procedurally unconscionable and substantively unconscionable. *Id.* at 7–9. The Court addresses each argument in turn.

### a. Applicability of the Arbitration Provision

Plaintiff notes that while the Employment Agreement contains an arbitration provision, and the Amendment incorporates the arbitration provision, no such provision is included in the Separation Agreement. Pl.'s Resp. at 5. Plaintiff reasons that the fact that the parties included an arbitration provision in the Employment Agreement and explicitly incorporated it into the Amendment but did not do so in the Separation Agreement reveals that the parties did not intend to subject claims under the Separation Agreement to arbitration. *Id.* Plaintiff insists that the Separation Agreement is a separate and distinct contract. *Id.* at 3. Moreover, Plaintiff asserts that it is the Separation Agreement and not the Employment Agreement that is the basis for her claims. *Id.* at 3–4.

13

As to Defendants' contention that the Separation Agreement is integrated into the Employment Agreement because a draft separation agreement was included as an exhibit to the Employment Agreement, Plaintiff responds that parties cannot prospectively integrate the anticipated terms of a hypothetical future agreement into a contract. Pl.'s Resp. at 6.

Last, Plaintiff argues that the Separation Agreement includes an integration clause that explicitly provides that it constitutes the entire agreement between the parties and supersedes all previous communications with respect to the subject matter of the Separation Agreement. Pl.'s Resp. at 6. Similarly, Plaintiff notes that the Employment Agreement also contains an integration clause. Thus, Plaintiff reasons that because the Separation Agreement changes the terms of Plaintiff's compensation, the two agreements share the same subject matter. *Id.* Therefore, Plaintiff concludes that the parties intended the Separation Agreement to supersede the Employment Agreement, and accordingly, there is no binding arbitration agreement. *Id.* at 6–7.

Under Ohio law, which governs this dispute based on the choice-of-law provisions in the Employment Agreement and the Separation Agreement, "[t]he construction and interpretation of contracts are matters of law." *Latina v. Woodpath Dev. Co.*, 567 N.E.2d 262, 264 (Ohio 1991). It is generally presumed that the intent of the parties to a contract resides in the language the parties choose to employ in their agreement. *Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992). Additionally, contracts must be read as a whole and interpreted so as to give effect to

14

every provision. *Chirchiglia v. Ohio Bureau of Workers' Comp.*, 742 N.E.2d 180, 182 (Ohio Ct. App. 2000).

In *Council of Smaller Enters. v. Gates, McDonald & Co.*, 687 N.E.2d 1352, 1355–56 (Ohio 1998), the Ohio Supreme Court set forth guidelines in determining the arbitrability of a given dispute: (1) arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit; (2) the question whether a particular claim is arbitrable is one of law for the court to decide; (3) when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and, importantly, (4) when a contract contains an arbitration provision, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. The Court evaluates the applicability of the arbitration provision as to each of Plaintiff's claims in light of the foregoing principles.[8]

### i.   Count III—Declaratory Judgment

In Count III, Plaintiff seeks a declaratory judgment that the non-competition and confidentiality provisions in the Employment Agreement are unenforceable as a

---

[8]The Court first considers the arbitration provision in the context of Count III because this count deals with a dispute under the Employment Agreement. It next considers Count II because this count concerns a breach of the Separation Agreement—this analysis informs the Court's evaluation of the arbitration provision in the context of Count I, which the Court addresses last.

matter of law. Compl. ¶¶ 53–61. Surprisingly, though, Plaintiff argues that her claims are not premised on the Employment Agreement, but rather on the Separation Agreement. Pl.'s Resp. at 3–4. The Court disagrees. The arbitration provision stems from the Employment Agreement itself. In Count III, Plaintiff specifically alleges that "the non-competition restriction contained in Section 6(a) of the *Employment Agreement* is overly broad because it seeks to prohibit [Plaintiff] from providing any services, either directly or indirectly within the telecommunications industry, even if FC does not provide such services itself." Compl. ¶ 58 (emphasis added). She also alleges that "the confidentiality restriction contained in Section 7(a) of the *Employment Agreement* is overly broad as FC seeks to use it as an indefinite non-solicitation against [Plaintiff]." *Id.* at ¶ 59 (emphasis added). The Court finds that the claims raised in Count III clearly fall within the Employment Agreement's arbitration provision and are therefore subject to arbitration.

### ii.    Count II—Breach of Contract

In Count II, Plaintiff asserts a breach of contract claim under the Separation Agreement. Compl. ¶¶ 46-52. The Court next addresses whether the arbitration provision in the Employment Agreement governs this claim, which turns on whether the Separation Agreement incorporates the arbitration provision. The Court finds that it does.

Ohio contract law includes the doctrine of incorporation by reference. *Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743, 751 (Ohio Ct. App. 2016). When a contract incorporates a document by reference, that document becomes part of the

16

contract. *Id.* While Ohio law does not set forth any standard for determining when a contract incorporates another document by reference, the court in *Volovetz* noted that parties to a contract may incorporate contractual terms by reference to a separate, non-contemporaneous document, including a separate document which is unsigned, if "the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt." *Id.* (quoting 11, Lord, Williston on Contracts, Section 30:25, at 294–301 (4th ed. 2012)). Mere reference to another document, however, is not sufficient to incorporate that document into a contract. *Id.* Rather, the contract language "must also clearly demonstrate that the parties intended to incorporate all or part of the referenced document." *Id.* (internal citations omitted). The language of the agreements supports incorporation of the arbitration provision into the Separation Agreement.

First, the language of the Employment Agreement contemplates a direct connection to the Separation Agreement. Section 10 of the Employment Agreement explicitly states that if FC terminates Plaintiff without cause, "upon execution and delivery (and non-revocation) of the Separation and General Release in the form attached hereto as <u>Exhibit A</u>, [FC] shall continue to pay [Shaw] for one (1) year following the date of termination." *See* Employment Agreement at 9 (emphasis in original). The draft separation agreement attached as Exhibit A to the Employment Agreement is almost identical to the Separation Agreement FC and Plaintiff ultimately executed. In fact, the only material change is the removal of Section 4 from the draft agreement, titled "Post-Termination Incentive," which contemplates a

17

bonus payment to Plaintiff if there is a sale of any of FC's assets during a certain time period. *See* Employment Agreement and Separation Agreement. Further, any additional changes relate to the amount and schedule of Plaintiff's severance payment. The choice-of-law provisions and the continuing obligation sections are the same. *Id.* As Defendants point out, pursuant to Section 10 of the Employment Agreement, FC was required to provide the Separation Agreement for Plaintiff to execute upon her termination without cause. Defs.' Reply at 4.

Second, the language of both agreements further supports incorporation. Defendants correctly point out that Section 6(a) of the Employment Agreement states that Plaintiff's non-competition and non-solicitation covenants were made in exchange for "consideration of the benefits provided to [Plaintiff] hereunder including severance payments, if any, made by [FC] hereunder." Defs.' Reply at 5 (quoting Employment Agreement at 4). Similarly, the explicit language of Section 12 of the Separation Agreement states that Plaintiff would continue to remain obligated to any agreements between Plaintiff and FC with respect to non-competition and non-solicitation, including the Employment Agreement. Separation Agreement at 5. The Court agrees with Defendants that this provision is unambiguous, and Plaintiff agreed to abide by all provisions in the Employment Agreement, not just the non-competition and non-solicitation provisions. *See* Defs.' Reply at 5.

And, while Plaintiff correctly points out that the Separation Agreement does contain an integration clause, the Separation Agreement also explicitly references the existence of the Employment Agreement and references specific provisions in the

18

Employment Agreement. Separation Agreement at 5. Specifically, Section 12 of the Separation Agreement states that Plaintiff "acknowledges that nothing in this Agreement shall limit or otherwise impact [Plaintiff's] continuing obligations of confidentiality to [FC] in accordance with [FC] policy and applicable law, or any applicable policies or agreements between [FC and Plaintiff] with respect to non-competition or non-solicitation, including, without limitation, the *Employment Agreement* between [Plaintiff and FC], and [Plaintiff] covenants and agrees to abide by all such continuing obligations." *Id.* (emphasis added). The Court cannot ignore this provision and must give it effect. *See Chirchiglia*, 742 N.E.2d at 182.

Finding that the Separation Agreement incorporates the arbitration provision also comports with the Court's obligation of finding a presumption of arbitrability under Ohio law as it relates to arbitration. *Council of Smaller Enters.*, 687 N.E.2d at 1356 (". . . where the contract contains an arbitration provision, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of '[a]n interpretation that covers the asserted dispute.'") (internal citations omitted); *see also AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (noting that doubts should be resolved in favor of coverage).

Plaintiff relies on two cases applying Ohio law to support her position, but both are distinguishable from this case. In *Vaughn v. Charter Commc'ns, LLC*, 2020 WL 377830, at *1 (N.D. Ohio Jan. 23, 2020), the plaintiff sued his employer defendant

19

over alleged civil rights violations, and the defendant moved to compel arbitration based on an arbitration agreement with the plaintiff's former employer. The court denied the motion. *Id.* The plaintiff had completed an online agreement to arbitrate employment disputes with his former employer. *Id.* Later that year, his former employer merged with the defendant. The defendant then offered the plaintiff a promotion via a letter agreement which contained an integration clause that stated the letter agreement "constitutes the full terms and conditions of your employment with the Company; it supersedes any other oral or written promises that may have been made to you." *Id.* The court did not determine whether the parties had a previous binding arbitration agreement, instead holding that the letter agreement did not incorporate such a potential arbitration agreement, especially in light of the fact that the letter contained the full terms and conditions of the plaintiff's employment. *Id.* Here, though, the integration provision in the Separation Agreement only supersedes previous communications between the parties "with respect to the subject matter of this Agreement." Separation Agreement at 5. The Separation Agreement addresses a different subject matter than that of the Employment Agreement, namely that of Plaintiff's separation from FC, not her employment with FC. *Vaughn* is distinguishable.

In *Kaminsky v. New Horizons Computer Learning Ctr. of Cleveland*, 62 N.E.3d 1054, 1056 (Ohio Ct. App. 2016), the plaintiff entered into an employment agreement with the employer defendant which contained an arbitration provision. He then submitted his two weeks' notice to the defendant after accepting a job offer with

20

another company. *Id.* In order to retain the plaintiff, the defendant negotiated new terms of employment with the plaintiff, which were memorialized in an email. Importantly, there was no formal second employment contract. *Id.* After the plaintiff was terminated, he filed suit for breach of contract and other business torts against the defendant. *Id.* at 1057. While the defendant argued that the new email employment contract did not invalidate the original employment contract, the court disagreed, finding that the plaintiff was no longer bound by the original contract when he negotiated a new employment contract. *Id.* at 1059. The court specifically noted that the new employment contract explicitly renewed prior and separate confidentiality and non-competition agreements the parties had signed but failed to reference the original employment agreement. *Id.* The facts in *Kaminsky* do not help the Court in analyzing the dispute here. Plaintiff did not sign a new employment agreement which outlined the terms of her ongoing employment with FC. Instead, she signed a previously-drafted Separation Agreement that addressed payments she would receive as a result of her separation from FC.[9] *Kaminsky* is also distinguishable.

Considering that the language of the agreements supports incorporation of the arbitration provision into the Separation Agreement (a finding that comports with the Court's obligation under Ohio law as it relates to arbitration), and considering that Plaintiff's cited cases in support are easily distinguishable from the facts here,

---

[9]Plaintiff cites to two other cases, but again, neither case evaluates the arbitrability dispute under Ohio law. *See* Pl.'s Resp. at 5 (citing *Liebl v. Mercury Interactive Corp.*, 2006 WL 3626764 (N.D. Ill. Dec. 12, 2006); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002)).

the Court finds that the Separation Agreement incorporates the arbitration provision. As such, the Court finds that Plaintiff's breach of contract claim under Count II is subject to arbitration.

### iii.        Count I—IWPCA

Next, the Court addresses the applicability of the arbitration provision to Plaintiff's IWPCA claim under Count I, based on Defendants' alleged failure to pay her severance under the Separation Agreement. Compl. ¶¶ 38–45. Along with their argument that all of Plaintiff's claims should be arbitrated, Defendants also assert that Plaintiff's IWPCA claim should be dismissed in deference to the Ohio choice-of-law provision. Mot. Dismiss. at 9–10. Plaintiff counters that the choice-of-law provision does not apply to its statutory IWPCA claim. Resp. at 9–10.

The Court need not decide whether Plaintiff's IWPCA claim should be dismissed based on the Ohio choice-of-law provision. *See AT&T Techs., Inc.*, 475 U.S. at 650 ("The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.") (internal citations omitted). Instead, the Court finds that the IWPCA claim should be arbitrated along with Plaintiff's other claims under the agreements. "Once it is clear . . . that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore*

*v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Moreover, broad arbitration clauses "necessarily create a presumption of arbitrability." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) (arbitration clause covering claims "arising out of or relating to" the agreements between the parties was an extremely broad provision capable of an expansive reach.) The "touchstone of arbitrability" is the "relationship of the claim to the subject matter of the arbitration clause." *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993).

As Defendants correctly point out, in *Acad. of Med. of Cincinnati v. AETNA Health Inc.*, 842 N.E.2d 488, 494 (Ohio 2006), the Ohio Supreme Court adopted a test articulated by the Sixth Circuit in *Fazio v. Lehman Bros.*, 340 F.3d 386 (6th Cir. 2003), by which a court "ask[s] if an action could be maintained without reference to the contract or relationship at issue." Defs.' Reply at 6. If it can, the Ohio Supreme Court reasoned, "it is likely outside the scope of the arbitration agreement." *Acad. of Med. of Cincinnati*, 842 N.E.2d at 494.

Here, the arbitration provision has an expansive reach that encompasses Plaintiff's IWPCA claim. The claim is based on Defendants' alleged failure to pay Plaintiff's severance pursuant to Section 3 of the Separation Agreement. Compl. ¶ 43. Accordingly, Plaintiff cannot maintain her IWPCA claim without reference to the Separation Agreement. Based on the Court's analysis of Plaintiff's claim under the Separation Agreement above, it follows that her IWPCA claim is within the scope of the arbitration provision. Arbitration of Plaintiff's IWPCA claim does not deprive her

of any rights under the IWPCA. *See Uehlein v. Scwachman*, 156 Ill. App. 3d 274, 277 (Ill. App. Ct. 1987) ("In compelling a party to arbitrate claims pursuant to a union contract, we are not asking such party to give up substantive rights arising out of the Illinois Wage Payment and Collection Act. Rather, such parties are being held to the terms of a pre-existing agreement to resolve their claims in an arbitrable rather than judicial forum.").

At least one other court within this District has reached the same conclusion based on a similar set of facts. In *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 798–99 (N.D. Ill. 2013), the court relied upon a broad arbitration provision in an employment agreement between the plaintiffs and the employer defendant to find that all of the plaintiffs' claims, including their IWPCA claim, fell within the scope of the arbitration provision and were subject to arbitration. The court held that even if the dispute did not involve interpretation or performance of a contract per se, the plaintiffs' claims, which concerned compensation and rate of pay, arose out of or related to the employment agreement. *Id.* at 799. Similarly, here, Plaintiff's IWPCA claim is not a contractual claim but derives from her agreement with FC and must be arbitrated along with her contractual claims.[10]

The Court finds that Plaintiff's IWPCA claim under Count I is subject to the Employment Agreement's arbitration provision.

### b. Validity and Enforceability of the Arbitration Provision

---

[10]The Court agrees with Defendants, that because Plaintiff's IWPCA claim against FC is identical to her claim against the individual Defendants, even though Defendants are not parties to either agreement, Plaintiff's IWPCA claim against all Defendants is subject to arbitration. *See* Mot. Dismiss at 9.

Because the Court has determined that Plaintiff's claims are subject to the arbitration provision, the Court next discusses Plaintiff's challenges of the validity and enforceability of the arbitration provision itself. Plaintiff posits that if the arbitration provision in the Employment Agreement applies to her claims, the arbitration provision should not be enforced, because it is both procedurally unconscionable and substantively unconscionable. Pl.'s Resp. at 7–9.

The Federal Arbitration Act (FAA) permits courts to apply state-law doctrines related to the enforcement of arbitration agreements. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020). The FAA provides that an arbitration agreement in writing "shall be . . . enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (quoting 9 U.S.C. § 2). This provision requires federal courts to place arbitration agreements "upon the same footing as other contracts." *Id.* (quoting *Volt Info. Sciences, Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989)). Furthermore, courts examine the language of a contract in light of the strong federal policy in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Id.* Due to the Ohio choice-of-law provision in the Employment Agreement, the Court again looks to Ohio law.

Arbitration agreements are "valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." *Taylor Bldg.*

25

*Corp. of Am. v. Benfield*, 884 N.E.2d 12, 240 (Ohio 2008) (internal citations omitted). Unconscionability is a ground for revocation of a contract. *Id.* The doctrine of unconscionability includes both an absence of meaningful choice on the part of one of the parties to a contract (procedural unconscionability) together with contract terms which are unreasonably favorable to the other party (substantive unconscionability). *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009). The party asserting unconscionability bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *Taylor Bldg.*, 884 N.E.2d at 20; *see also Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1294, 1299 (Ohio Ct. App. 1993) ("One must allege and prove a 'quantum' of both prongs in order to establish that a particular contract is unconscionable.") (internal citations omitted).

Moreover, a determination of whether a contract is unconscionable is an issue of law. *Taylor Bldg.*, 884 N.E.2d at 20. An arbitration clause is a contract within a contract and subject to revocation on its own merits, and a party challenging an arbitration clause as unconscionable must show that the arbitration clause itself is unconscionable. *Id.* at 22. The Court evaluates the arbitration provision under both procedural unconscionability and substantive unconscionability.

### i.      Procedural Unconscionability

Plaintiff first asserts the arbitration provision is procedurally unconscionable. Pl.'s Resp. at 7–8. She claims that the arbitration provision does not identify which rules and procedures of the AAA apply, and that even if it did, there was no way she could have known what the applicable rules would be at the time of signing both the

Employment Agreement and the Amendment, as they could be changed at any time without her notice or consent. *Id.*[11] She also argues that the material terms of the arbitration provision were concealed from her. *Id.* at 8. She further claims that there was a significant disparity in bargaining power between herself and Defendants based on the fact that Morris pressured her to start before the Employment Agreement was signed; that the Employment Agreement Defendants presented to her after she started her employment with FC was not consistent with their original discussions; that she was no longer in a position to negotiate since she left her prior position and needed to continue working; and that she was not represented by counsel at the time she signed the Employment Agreement. *Id.*

Defendants respond that nothing in the Complaint or Response suggests that Plaintiff was unaware of the impact of the Employment Agreement or was otherwise limited in understanding its terms. Defs.' Reply at 9. Similarly, they assert that Plaintiff does not contend that she failed to understand the terms of the arbitration provision or was otherwise limited in understanding its terms. *Id.* Defendants also argue that the facts alleged in the Complaint and terms of the Employment Agreement contradict Plaintiff's assertion that she was pressured into signing the Employment Agreement, that she was not represented by counsel based on the counsel review provision in the Employment Agreement, and that she lacked bargaining power by giving up her prior employment before signing the Agreement. *Id.* at 10.

---

[11]The Court addresses these claims in the substantive unconscionability section.

In determining whether an arbitration agreement is procedurally unconscionable, courts consider the circumstances surrounding the contracting parties' bargaining, such as the parties' age, education, intelligence, business acumen and experience, who drafted the contract, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods in question. *Taylor Bldg.*, 884 N.E.2d at 22. The crucial question is whether each party to the contract, considering his or her obvious education or lack of it, had a reasonable opportunity to understand the terms of the contract or if important terms were hidden in a maze of fine print. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003); *see also Collins*, 621 N.E.2d at 1299 (stating that procedural unconscionability occurs when no voluntary meeting of the minds was possible).

The Court finds that the arbitration provision in the Employment Agreement is not procedurally unconscionable. Plaintiff admits that she voluntarily chose to work for FC. *See* Compl. ¶ 15. Before she worked for FC, Plaintiff was the President of Cloudnition, LLC, a company she had founded. *Id.* ¶ 14. Plaintiff has not alleged in the Complaint and has not stated in her declaration that her only option at that time was to seek employment with FC. Moreover, as Defendants point out, Section 1(c) of the Employment Agreement stated that subject to certain conditions, Plaintiff could continue to have an ownership interest and act as an adviser to Cloudnition, LLC. Defs.' Reply at 10; *see also* Employment Agreement at 1–2.

Similarly, while Plaintiff suggests that the material terms of the arbitration provision were concealed from her (Pl.'s Resp. at 7–8), Plaintiff has not alleged in the

Complaint and has not stated in her declaration that she was unaware of the arbitration clause or the impact of the arbitration clause, or that she was otherwise limited in understanding its impact.[12] Moreover, Plaintiff's allegations show that she had a certain amount of executive level experience and business acumen in the telecommunications industry prior to her role with FC. *See* Compl. ¶ 14.

While Plaintiff maintains that Morris pressured her to sign the Employment Agreement (Pl.'s Resp., Exh. 1, Shaw Dec. ¶ 10), Plaintiff has not made any allegations in the Complaint or statements in her declaration that Defendants provided a deadline by which she needed to sign the Employment Agreement, or alternatively, that she asked Defendants for additional time to review the Employment Agreement and Defendants denied such a request. Plaintiff also has not alleged or stated that she was obligated to start working for FC prior to the finalization and execution of an employment agreement or that she did not have the ability to refuse working for FC prior to the same.

The parties dispute whether Plaintiff was represented by counsel during the negotiation of the terms of the Employment Agreement. Plaintiff states that she did not have counsel negotiate or review the Employment Agreement based on Morris' representations of fairness. Shaw Dec. ¶ 9. However, Murphy, FC's General Counsel, states that Plaintiff was represented by counsel of her own choice "during the parties arm's length negotiation of her Employment Agreement, the Exhibit thereto, later amendment thereof and Separation Agreement." Mot. Dismiss, Exh. A, Murphy Dec.

---

[12]The Court also notes that the arbitration provision appears in standard print, not fine print. Employment Agreement at 11–12.

29

¶ 4. Murphy identifies Plaintiff's counsel as Mr. Richard Selby, an Ohio attorney working for Dworken & Berstein Co., L.P.A., and stated that Plaintiff "heavily negotiated the contractual obligations set forth in her agreements with FC with and through her Ohio legal counsel." *Id.* Notwithstanding this dispute, Section 13 of the Employment Agreement states that Plaintiff "represents and warrants that she has been advised by [FC] to have counsel review this Agreement." Employment Agreement at 10. Pursuant to this provision, Plaintiff agreed that FC advised her to have counsel review the Employment Agreement. Plaintiff has not alleged in the Complaint and has not stated in her declaration that she did not have the opportunity to consult counsel to review the Employment Agreement or assist her with negotiating the terms of the Employment Agreement, or that Defendants deprived her of such an opportunity.

Plaintiff leans heavily on the case of *Arnold v. Burger King*, 48 N.E.3d 69 (Ohio Ct. App. 2015) to support her procedural unconscionability argument. Pl.'s Resp. at 7–8. However, the facts in that case stand in stark contrast to the facts in this case. In *Arnold*, the plaintiff asserted claims for sexual harassment, employment discrimination, and other torts against her employer defendant and other defendants after she was raped at work by her supervisor. 48 N.E.3d at 72. The trial court denied the employer defendant's motion to compel arbitration despite the existence of a broad arbitration agreement that the plaintiff had executed. *Id.* The appellate court affirmed, holding that the plaintiff's claims were outside the scope of the arbitration

agreement and that the agreement was both procedurally and substantively unconscionable. *Id.* at 81–90.

The court found the arbitration agreement procedurally unconscionable based on the fact that there was clear disparity in bargaining power between the plaintiff and the employer defendant; that the employer defendant possessed unique and superior knowledge of the employment environment at the time the arbitration agreement was executed; that the plaintiff either had to sign the arbitration agreement or remain unemployed; and that the plaintiff could not alter any of the terms of the arbitration agreement. *Arnold*, 48 N.E.3d at 86. The court also found that there could be no true meeting of the minds when a party was unable to understand the agreement, noting that the arbitration agreement covered claims such as personal or emotional injury to the plaintiff's family and failed to explain "the tremendously overreaching impact of its terms on the employee's life both within and outside the scope of employment." *Id.* at 87.

The factors supporting *Arnold*'s conclusion that the arbitration agreement was procedurally unconscionable are not present in this case. Plaintiff has not pled allegations in the Complaint nor made statements in her declaration to support a finding that there was a clear disparity in bargaining power between her and Defendants; that FC possessed unique and superior knowledge of the employment environment at the time Plaintiff executed the Employment Agreement; or that Plaintiff could not alter the terms of the Employment Agreement before signing it. In fact, Plaintiff does not rebut Murphy's claim that Plaintiff "heavily negotiated the

31

contractual obligations set forth in her agreements with FC." Murphy Dec. ¶ 4. Moreover, unlike the plaintiff in *Arnold*, Plaintiff has not shown that she was unemployed prior to her signing of the Employment Agreement or prior to the beginning of her employment with FC. 48 N.E.3d at 86. Plaintiff has also not made any allegations in the Complaint or statements in her declaration that the arbitration provision had an overreaching impact both within and outside the scope of her employment with FC such that there was no meeting of the minds. The plain language of the arbitration provision itself also does not appear to have an overreaching impact both within and outside the scope of Plaintiff's employment with FC such that it covers personal or emotional injury to Plaintiff's family. *Id.* at 87.[13]

The Court finds that Plaintiff has not met any of the procedural unconscionability factors set forth in *Arnold*. Moreover, the Court finds that Plaintiff has failed to show that she did not have a reasonable opportunity to understand the arbitration provision or that it was hidden in a maze of fine print. *See Morrison*, 317 F.3d at 666 (6th Cir. 2003). All in all, Plaintiff has not met her burden to establish that the arbitration provision is procedurally unconscionable.

## ii.    Substantive Unconscionability

Plaintiff also argues that the arbitration provision is substantively unconscionable because (i) Sections 6 and 7 of the Employment Agreement allow Defendants to bypass arbitration and seek injunctive relief in court, and (ii) the

---

[13]While Defendants briefly address the arbitration scope argument raised in *Arnold* (Defs.' Reply at 7–8 (citing *Arnold*, 48 N.E.3d at 81–84)), Plaintiff does not rely on *Arnold* for this purpose.

Employment Agreement fails to clearly identify the rules and procedures that would apply in any potential arbitration. Pl.'s Resp. at 8–9.

Defendants respond that even though FC retained the right to bypass arbitration and seek injunctive relief from a court in the event of Plaintiff's breach of the non-competition and non-solicitation covenants in the Employment Agreement, Plaintiff does not dispute that FC agreed to arbitrate all other claims under the Employment Agreement. Defs.' Reply at 11. They assert that Ohio courts have rejected the argument that a mutuality of obligations is required to enforce an arbitration agreement. *Id.*

To assess whether a contract is substantively unconscionable involves "consideration of the terms of the agreement and whether they are commercially reasonable." *Hayes*, 908 N.E.2d at 414. "Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Id.* The Ohio Supreme Court has stated that it has not adopted any "bright-line set of factors for determining substantive unconscionability" but instead that the factors to be considered vary with an agreement's content. *Id.*

Plaintiff's mutuality argument requests the Court to narrowly construe the Employment Agreement, but such a narrow reading does not take into account the actual language of the arbitration provision. Sections 6 and 7 of the Employment Agreement allow Defendants the option to seek injunctive relief in the form of a

temporary restraining order only for alleged and specific violations of the non-compete and confidentiality restrictions, respectively. Employment Agreement at 4–7. They do not, however, obviate the requirement that Defendants must submit to mandatory arbitration for other violations of the Employment Agreement by Plaintiff. *Id.* at 11–12. The obligation to arbitrate is mutual for all other provisions of the Employment Agreement. *Id.*

Defendants cite again to *Fazio* for the proposition that Ohio courts have rejected Plaintiff's argument that a mutuality of obligations is required to enforce an arbitration agreement. Defs.' Reply at 11 (citing 340 F.3d at 396). In *Fazio*, the Sixth Circuit, applying Ohio law to evaluate an arbitration provision, noted that mutuality is not a requirement of a valid arbitration clause if the underlying contract is supported by consideration. 340 F.3d at 396–97 (citing *Joseph v. M.B.N.A. Am. Bank, N.A.*, 775 N.E.2d 550, 553 (Ohio Ct. App. 2002)). Here, Defendants correctly point out that the Employment Agreement was supported by consideration, citing to Plaintiff's salary, bonus, deferred compensation, and severance payments. Defs.' Reply at 11.

Plaintiff has not presented any evidence addressing the factors the Ohio Supreme Court outlined in *Hayes*, 908 N.E.2d at 414. Plaintiff, instead, cites to two Ohio appellate court cases for support, *Post v. Procare Auto. Serv. Sols.*, 2007 WL 1290091 (Ohio App. Ct. May 3, 2007) and *Arnold*, 48 N.E.3d 69. Resp. at 8–9. Plaintiff argues that in *Post*, the court held that an arbitration agreement was substantively unconscionable because it limited the plaintiff to mandatory arbitration, but allowed defendants to seek injunctive relief for a breach or threatened breach of the non-

34

competition and confidentiality provisions in the employment agreement. Pl.'s Resp. at 9 (citing *Post*, 2007 WL 1290091, at *3). In *Post*, six employee plaintiffs filed an employment discrimination action against their employer defendant and its CEO under an Ohio employment discrimination statute, R.C. 4112.02(A), based on an alleged wrongful termination. 2007 WL 1290091, at *1. The defendants filed a motion to dismiss one of the plaintiff's complaints for lack of jurisdiction, or in the alternative, to compel arbitration and stay proceedings, based on an arbitration clause in a written employment agreement with the plaintiff. *Id.* The trial court denied the motion, and the defendants appealed. *Id.* at *1–2.

The appellate court found that the arbitration clause was substantively unconscionable, because while the plaintiff was limited to mandatory arbitration regarding any employment dispute, the employment agreement provided that the employer defendant could bypass arbitration and seek judicial remedies in court to obtain injunctive relief for any breach or threatened breach by the plaintiff of the covenants contained in the non-competition and confidentiality provisions of the employment agreement. *Post*, 2007 WL 1290091, at *3. Yet, the provisions in the Employment Agreement here are distinguishable, because they do not provide such a one-sided approach to FC. Pursuant to the language in the non-competition, non-solicitation, and confidentiality provisions of the Employment Agreement, upon adequate proof of Plaintiff's violations of any legally enforceable provision of either provision, FC "shall be entitled to seek immediate injunction relief and may obtain a temporary restraining order restraining any threatened or further breach."

Employment Agreement at 6–7.[14] The Employment Agreement does not allow FC to seek any type of injunctive relief through litigation, as opposed to the expansive nature of the provisions at issue in *Post*. Moreover, as opposed to the claims in *Post*, here, in addition to Plaintiff's statutory claim, which is not an employment discrimination claim, Plaintiff has also brought two contractual claims. 2007 WL 1290091, at *3.

Additionally, Plaintiff's reliance on *Arnold* is again misplaced. *See* Pl.'s Resp. at 9. Plaintiff cites to *Arnold* for the proposition that the court's finding of substantive unconscionability was based on the fact that a party, at the time of signing the arbitration agreement, would not be able to identify the applicable rules and regulations or would not know what terms and conditions applied because the rules could be revised at any time without notice. *Id.* (citing *Arnold*, 48 N.E.3d at 89–90). While the court found that the arbitration agreement was substantively unconscionable, it based its conclusion primarily on the fact that the arbitrator would be resolving disputes unrelated to the plaintiff's employment due to the far-reaching breadth of the arbitration agreement. *Arnold*, 48 N.E.3d at 87.[15]

---

[14] The court in *Post* also found that the arbitration clause was substantively unconscionable because it required the plaintiff to surrender his right to recover attorneys' fees, because the clause provided that each party would pay its own attorneys' fees. 2007 WL 1290091, at *3. Yet, more recently, the Ohio appellate court has held that such language does not make an arbitration clause unconscionable. *Short v. Res. Title Agency, Inc.*, 2011 WL 1203906, at *5 (noting that "the Ohio Supreme Court recently found that the provision in a voluntary arbitration agreement requiring both parties to bear their own attorney fees and costs equitably eliminated both parties' ability to recover attorney fees and is not commercially unreasonable.") (citing *Hayes v. The Oakridge Home*, 908 N.E.2d 408, 414–15 (Ohio 2009)).

[15] The court also made note of several other factors leading it to conclude the arbitration agreement was substantively unconscionable: even though a policy notice accompanying the arbitration agreement stated that arbitration is "quicker and less expensive for both sides,"

Regarding the factor Plaintiff highlights from *Arnold* (she was unable to discern which rules and regulations applied, because the rules could be revised at any time without notice), Plaintiff does not make any allegations in the Complaint or any statements in her declaration regarding her understanding, or lack thereof, of the AAA arbitration rules and procedures. Regardless, though, this factor alone does not determine whether the arbitration provision is substantively unconscionable, and Plaintiff fails to address the other factors in her Response. Significantly, the arbitration provision does not reach disputes unrelated to Plaintiff's employment, as the arbitration agreement did in *Arnold*. 48 N.E.3d at 87. Moreover, many of the other factors present in *Arnold* are not present here. There is no statement in the arbitration provision or Employment Agreement that arbitration is quicker and less expensive, and the arbitration provision does not purport to limit the recovery of damages that a party would otherwise be entitled to in litigation. The arbitration provision is silent on the costs of the arbitration and the filing of an arbitration claim, so the Court cannot apply the court's analysis of those factors in *Arnold* here either. *Id.* at 87–88. The arbitration provision also does not give the parties the right to go

---

that was not always the case; the arbitration agreement limited the plaintiff's recovery of damages otherwise available via litigation; while the arbitration agreement indicated how to file an arbitration request and how to mail it, there was no mention of a method to verify its timeliness; while the arbitration agreement provided a partial reimbursement of the arbitration filing fee by the defendant based on timeliness of delivery of proof of payment, it failed to describe what constituted proof of payment and did not include a statement of the cost of arbitration; the arbitration agreement referred the plaintiff to the JAMS website, provided a generic link, and incorporated the JAMS terms and conditions by reference; the court examined the JAMS website and found that there was nothing to direct "an arguably unsophisticated individual through the maze of information in order to ascertain which of the multiple documents" applied to pursuing arbitration against the defendant; and the court noted that there was no choice-of-law provision or waiver clause in the arbitration agreement, which noted that the forum location "will be convenient to the employee." *Id.* at 88–90.

to court if they are faced with the risk of irreparable harm, and in contrast to the arbitration agreement in *Arnold*, there is a choice-of-law provision in the Employment Agreement, which also provides that the arbitration shall take place in Akron, Ohio. Employment Agreement at 10. In many respects, both the arbitration provision and Employment Agreement are distinguishable from the arbitration agreement in *Arnold*. 48 N.E.3d at 87–88.[16]

As such, similar to its finding regarding procedural unconscionability, the Court finds Plaintiff has not met her burden of showing that the arbitration provision is substantively unconscionable.

In sum, Plaintiff's claims are subject to the arbitration provision, and the arbitration provision is enforceable. As a result, the Court grants Defendants' Motion to Dismiss Plaintiff's Complaint based on improper venue. The Court need not address the remaining arguments Defendants put forth for dismissal.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint [15] is granted, and the Court orders Plaintiff to pursue her claims via arbitration before the American Arbitration Association in Akron, Ohio. The civil case is terminated.

DATED: January 14, 2021

United States District Judge
Franklin U. Valderrama

---

[16]Plaintiff cites to two other cases, but neither case evaluates the arbitration provisions at issue under Ohio law. *See* Pl.'s Resp. at 9 (citing *Lopez v. Plaza Finance Co.*, 1996 WL 210073 (N.D. Ill. Apr. 25, 1996); *Carbajal v. CWPSC, Inc.*, 199 Cal. Rptr. 3d 332 (Cal. Ct. App. 2016)).